FEIST & FEIST, INCORPORATED, RESPONDENT, v. SIGMUND SPITZER, APPELLANT.

Argued February 6, 1930—Decided May 19, 1930.

For the appellant, *Merritt Lane.*

For the respondent, *Philip J. Schotland.*

The opinion of the court was delivered by

BODINE, J. The defendant entered into a written agreement to pay the plaintiff brokerage commissions for procuring a tenant for a long term for certain premises in Perth Amboy. The United Stores Realty Company, a subsidiary of the United Cigar Stores Company, was produced as a proposed lessee. This lessee was acceptable to the defendant, and its

representative was furnished with the deed and a survey for the purpose of preparing a lease.

As it so often happens, the form of the lease was the subject-matter of considerable discussion. After the first draft was prepared several conferences were held, the defendant and the tenant each submitting points for agreement. On September 26th, 1925, the parties arranged for a final conference in New York preparatory to the preparation of the fourth draft of the lease. The defendant's son, a New York lawyer, together with a New Jersey lawyer, had been present at previous conferences, the defendant unable at the last minute to go to New York sent his son. The testimony indicates that every provision of the lease was gone over and every provision was agreed to save one, and that related to the rights of the respective parties in the event the property was condemned. Two clauses were drafted by the lessee. It was stated that either was satisfactory to it. The defendant's son stated that, in his opinion, either was sufficient, but that he would leave the final selection to his father and would report the following Monday. The conference took place on a Saturday. The defendant, however, made no selection, refused to proceed further, and leased the property to another, and has refused to pay the commissions called for in the contract and for which the plaintiff had judgment.

The case was tried on the theory that after the plaintiff had procured a tenant acceptable to the defendant, and the lease had been prepared and agreed to, the defendant refused to perform.

The case turns on whether there was sufficient evidence of the apparent authority of the defendant's son to justify sending the case to the jury. The trial court charged as follows: "Yet if it appear by what the father permitted his son to do, what he held him out as possessing authority to do, that he actually did give his son authority to bind him and to close this lease, then he would be bound by what his son said and did on this 26th day of September, 1925, because agency may be conferred in two ways. It may be

conferred by express authority or it may be conferred by a person in permitting another person to act in his behalf, sanctioning his acts in such a way as to indicate to the persons with whom he is dealing that that person has authority as his agent to bind him in that transaction."

In view of the evidence adduced the question was properly submitted to the jury. *Law* v. *Stokes,* 32 *N. J. L.* 249; *J. Wiss & Sons Co.* v. *H. G. Vogel Co.,* 86 *Id.* 618; *Heckel* v. *Cranford Golf Club,* 97 *Id.* 538; *White Door Bed Co.* v. *United States Mortgage Co.,* 106 *Id.* 372.

It is apparent from the testimony adduced that the proposed tenant was entirely satisfactory to the defendant at the time he turned over his title deed and the survey of the premises for the purpose of having the lease drawn. It is further apparent that the defendant discussed the form of the lease on two other occasions and that the understanding of the parties was reduced to substantially a written form. Only certain matters of phraseology remained for adjustment at the conference fixed for September 26th, 1925, in New York. The defendant's son was conversant with the matter and appeared instead of his father at the final conference, went over the matter in detail and approved of the questions under discussion. He now states that he was entirely lacking in authority and was obliged to report back to his father the outcome of the conference for approval. There might possibly be something in this contention were it not for the fact that the parties were in substantial agreement before the final conference was ever undertaken. All that remained to be done was to reduce to legal phraseology the expressed understandings of the parties.

Under the cases, *supra,* the test for the submission of the issue of apparent authority to a jury seems to be whether a person of ordinary prudence, conversant with business usages and the particular business in hand, would believe that the defendant had sent his son to represent him and to act for him at the conference. The point of discussion was not a matter of business policy, but a matter of legal form. It seems only reasonable that those who were at the conference,

knowing the business to be undertaken and familiar with the business usages, would believe that the son, because of his peculiar fitness as a lawyer, had been sent to agree upon the final form of language in which the agreement of the parties should be settled.

From an examination of the case it seems apparent that not only was the testimony properly submitted to the jury, but it is difficult to see how judges of the fact could have found otherwise. The doctrine of apparent authority rests in the principle of equitable estoppel. It is argued that since the brokers were not a party to the lease that there was no reliance by them upon the apparent authority of the defendant's son, and hence that there was no altering of their position. The brokers' commissions depended upon their performance of their agreement. They were present at the conferences in order to secure performance of their own contract, and it is apparent that they relied upon the representations made and altered their position by reason thereof to the same extent and in the same manner as the lessee. If the defendant's son was not clothed with apparent authority to act for the defendant the plaintiff failed to perform its contract. The plaintiff with its vital interest in the outcome was just as much entitled to rely upon the reasonable appearances as any other person dealing with the defendant with respect to the matter and was just as much deceived by the defendant's conduct.

The trial judge quite properly, in the exercise of his discretion, refused to strike the answers to certain questions. The defendant's son, called as a witness by the plaintiff, testified that he was at the conference September 26th, 1925, in order to work out satisfactory provisions in the lease for his father. This testimony was not objected to but seems proper under *Leonard* v. *Standard Aerial Corp.,* 95 *N. J. L.* 235. The answers, which were not stricken by the trial judge, related to statements made by the son at the conference. If these statements were not within the rule laid down in *Smith* v. *Delaware and Atlantic Telegraph and Telephone Co.,* 64 *N. J. Eq.* 770, still the failure to strike rests in the

sound discretion of the trial judge. And further, the trial judge stated in his charge that there was no evidence in the case of any express authority of the son to represent his father.

The whole case was tried and submitted on the theory of apparent authority and this was made distinctly clear to the jury. Whatever view may be taken of the precise rulings of the trial judge either in refusing to strike answers or in admitting testimony with respect to what was said by the son, they seem harmless in light of the charge and the theory of the trial.

The defendant's contention throughout was that his son was to report the outcome of the meeting. Hence, there is no force to the objection to the question eliciting the answer that the son had stated after the meeting of September 26th, 1925, that he was unable to get in touch with his father. The defendant's whole case suggests that this was the point upon which the defendant most strongly relied. He sought to show that the son was at the meeting merely to fetch and carry, and that he had never ratified anything done.

"Where a real estate agent produces a purchaser able to buy, who is accepted by the vendor * * * the agent's commissions under his contract with the vendor is earned, notwithstanding it was stipulated to be paid at the time of the passing title, which did not pass * * *." *Dermody* v. *New Jersey Realties*, 101 *N. J. L.* 334, 336.

The brokerage contract in suit provided that the commission should be paid over a period of years when the transaction was closed. It is argued that the plaintiff had not performed since the transaction was never closed. The rule of law above stated seems, however, to be controlling. The brokers had produced a tenant able to lease and agreeable to the defendant. The verdict of the jury on the issue submitted is conclusive. The only reason that the commissions were not paid to the broker was because the defendant had repudiated his agreement. He cannot so defeat his obligations.

In conclusion it may be stated that the proofs indicate the authority of the representatives of the United Stores Realty Company to bind it.

The judgment below is affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, CAMPBELL, LLOYD, CASE, BODINE, VAN BUSKIRK, McGLENNON, KAYS, DEAR, JJ. 12.

*For reversal*—None.